**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOSEPH LAVALLEY, THOMAS D.     )
SMITH, and DYLAN TORRES PAGAN,   )
                                 )
    Plaintiffs                       )
                                 )
vs.                              )     Case No. 3:24-cv-01055
                               )
ST. JOHNS COUNTY, FLORIDA,     )
                               )
    Defendant.                  )
_____)

**PLAINTIFFS' MOTION FOR PRELIMINARY**
**INJUNCTION AND MEMORANDUM OF LAW**

Plaintiffs move for a preliminary injunction enjoining Defendant St. Johns County ("County") from enforcing St. Johns County Ordinance No. 2023-16 (the "Ordinance"). In support, Plaintiffs state:

1)    The Ordinance prohibits Plaintiffs from engaging in charitable solicitation along roadways and on medians throughout the County. The Ordinance is unconstitutional, both facially and as applied to Plaintiffs, because it prohibits constitutionally protected expression in traditional public forums.

2)    The Ordinance makes it unlawful to use the public rights-of-way in a manner that "interferes with the safe and efficient movement of people and property" on every public road, street, and highway in the County and provides two examples of prohibited activity: (1) "engaging in any physical interaction" with an occupant of a motor vehicle that is in a travel lane of a designated roadway (the

"physical interaction provision"); and (2) "stopping, sitting, standing or remaining in a median" on a designated roadway when a person is not in the process of crossing the road (the "median provision").

3)     The Ordinance is an impermissible content-based restriction because it was designed to target panhandling and those who engage in it. The Ordinance was enacted to address the "growing problem" in St. Johns County of panhandling.

4)     The Plaintiffs are individuals of limited means who would like to ask individuals they encounter for food, money and similar necessities by panhandling on public sidewalks and along public streets. They have been cited under the Ordinance and warned by Sheriff Deputies to cease their activities.

5)     On its face and as applied to Plaintiffs, the Ordinance is an overbroad restriction of speech in violation of the First Amendment.

6)     The Ordinance is also unconstitutionally vague in violation of the Fourteenth Amendment because it is impossible to know what conduct interferes with the "safe and efficient movement of people and property," giving unbridled discretion to law enforcement to enforce it.

7)     As the result of the adoption and enforcement of the Ordinance, Plaintiffs have been hindered in the exercise of their First Amendment rights, face a continuing threat of citation and arrest, and have suffered damages.

8)     There exists a substantial likelihood that the Plaintiffs' challenges to the constitutionality of the Ordinance will succeed on the merits.

2

9)      If the requested preliminary injunctive relief is not issued, then Plaintiffs and other homeless individuals will be subjected to further loss of their First Amendment rights, loss of liberty due to arrest and incarceration, and will continue to be chilled in their speech. Plaintiffs therefore face irreparable harm without adequate remedy at law.

10)     Granting the relief sought will not result in the imposition of greater harm to the County and such relief is in the public interest. An immediate cessation of enforcement of this unconstitutional ordinance will further the public interest in that it will protect and preserve the exercise of core First Amendment activity.

11)     Plaintiffs request that the Court waive the requirement of bond in Fed. R. Civ. P. 65(c). Public interest litigation is a recognized exception to the bond requirement, especially where, as here, the posting of bond would cause significant hardship to Plaintiffs and the relief sought poses no hardship on the Defendant.

**WHEREFORE**, Plaintiffs move this Honorable Court for an Order preliminarily enjoining St. Johns County from enforcing Ordinance No. 2023-16.

<u>**MEMORANDUM OF LAW**</u>

### I.   Introduction

Soliciting charitable contributions is protected speech under the First Amendment of the U.S. Constitution. Yet, in St. Johns County, it is a crime for a person to ask for or receive a donation in traditional public forums such as streets, sidewalks, and medians. The County passed Ordinance 2023-2016 to address the "growing problem" of panhandling, and the Ordinance is enforced primarily

against individuals making requests for charity by holding signs along public roadways. A first violation of the Ordinance is punishable by a fine not exceeding $500.00; a second or subsequent violation is punishable by a fine not exceeding $500.00 and and/or imprisonment for up to 60 days. (ECF 1-1, § 5.)

Since the Ordinance was designed to target the protected expression of panhandling, it is subject to strict scrutiny. However, because the Ordinance is not narrowly tailored to any of the County's proffered interests, it fails constitutional review regardless of whether strict or intermediate scrutiny applies.

Plaintiffs are individuals experiencing homelessness and/or poverty who solicit charitable donations within the County. They wish to continue to engage in these activities to contribute to their survival, but the fear of arrest and prosecution under the Ordinance has significantly hampered their ability to do so. If the Ordinance is allowed to stand, the suppression of Plaintiffs' First Amendment rights will continue unabated. A preliminary injunction is necessary to protect Plaintiffs and others from the substantial threat of irreparable injuries while their claims are pending.

## II.    Statement of Facts[1]

Plaintiffs are residents of St. Johns County who do not have, or who in the past have not had, access to adequate sources of income, through employment or public benefits, to allow them to purchase necessities of life including food, shelter,

---

[1] Plaintiffs adopt and incorporate herein the Statement of Facts as set forth in ¶¶ 18 - 81 of Plaintiffs' Verified Complaint. (ECF 1.)

or permanent housing. (ECF 1 ¶¶ 36-37, 47, 56.) They engage in charitable solicitation by standing on County sidewalks or on the medians or shoulders of public streets to communicate their messages of need and pleas for assistance. (*Id.* ¶¶ 38-40, 48-49, 57-58.) They do not obstruct or otherwise interfere with traffic. (*Id.* ¶¶ 38, 48, 57.) They receive donations from passersby including food, water, hygiene products, clothing items, and cash. (*Id.* ¶¶ 41, 50, 59.)

On May 2, 2023, St. Johns County passed and adopted Ordinance No. 2023-16 ("Ordinance"). (*See* ECF 1-1.)  The Ordinance was drafted and presented to the St. Johns County Commission in response to a request to the County Attorney to draft an ordinance to address the "growing problem" of panhandling by people "who have made their livelihoods traveling the country standing on medians and corners asking for money." (ECF 1 ¶ 18.) On April 4, 2023, during a presentation to the Commission on Ordinance No. 2023-16, the County's proposed "Right-of-Way Safety Ordinance," the County Attorney explained that the proposed ordinance was merely one aspect of reducing the risk of motor vehicle accidents involving pedestrians and stated that there are "certainly other ways" to improve pedestrian safety. (*Id.* ¶¶ 19-20.) During passage of the Ordinance, the County did not present evidence that those who solicit donations along roadways were involved in or caused motor vehicle accidents. (*Id.* ¶ 30.)

The Ordinance makes it "unlawful to make any use of the public rights of way in a manner that interferes with the safe and efficient movement of people and property from place to place" on all public roads, streets, or sidewalks in the

County. (ECF 1-1 § 4(A).) The Ordinance further provides "by way of example and not limitation" two examples of prohibited activities:

> (i)      Engaging in any physical interaction between a pedestrian and an occupant of a motor vehicle, including the transfer of any product, material, or monies, while the motor vehicle is located on the traveled portion of designated roadway and is not legally; and

> (ii)     Stopping, sitting, standing, or otherwise occupying or remaining in a median on a designated roadway by a person when that person is not in the process of lawfully crossing the road in accordance with applicable traffic and safety laws, regulations, and ordinances

(ECF 1-1 § 4(A)(i)-(ii).)

The Ordinance does not further define what activity constitutes interference with the safe and efficient movement of people and property. A first violation is punishable with civil fines, but a second or subsequent violation is prosecuted as a criminal misdemeanor. (*Id.* § 5.)

The Ordinance has been enforced primarily against people soliciting charitable donations along the roadway. (*See* Exs. 1, 2) Since its enactment in May 2023 to date, 34 people—at least 24 of whom were merely panhandling or standing near the roadway holding a sign—have been cited for violating the Ordinance. (Ex. 1 at 1, 3-11, 13-15, 18- 31, 33-46, 48-62, 65-67; Ex. 2 at 1, 3.) Four of these cited individuals were arrested and taken to jail for standing along the roadway or in a median while requesting donations. (Ex. 1 at 6-10, 18-26, 34-43, 52-59.)

Plaintiffs LaValley and Smith have been cited for violations of the Ordinance while panhandling. (Ex. 2 at 1, 3.) Mr. LaValley was fined $100, and Mr. Smith was fined $500. (*Id.* at 2, 4.) Because they are indigent, they have no way to pay these

fines. (*See* ECF 1 ¶¶ 37, 47.) All Plaintiffs have been harassed and warned by Sheriff's deputies to stop panhandling and leave the area; they have observed Sheriff's deputies harassing other individuals engaged in panhandling. (*Id.* ¶¶ 42, 51, 60.) Moreover, Plaintiffs do not understand what activity the Ordinance proscribes and where it applies. (*Id.* ¶¶ 45, 54, 63.) As a result, Plaintiffs have all decreased the frequency with which they engage in panhandling and been chilled in their exercise of speech. (*Id.* ¶¶ 44, 46, 53, 55, 61, 64.)

<u>**ARGUMENT**</u>

Plaintiffs are entitled to a preliminary injunction enjoining the enforcement of Ordinance No. 2023-16. In evaluating the propriety of preliminary relief, a district court considers four factors: "(1) whether there is a substantial likelihood that the party applying for preliminary relief will succeed later on the merits; (2) whether the applicant will suffer an irreparable injury absent preliminary relief; (3) whether the harm that the applicant will likely suffer outweighs any harm that its opponent will suffer as a result of an injunction; and (4) whether preliminary relief would disserve the public interest." *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). All four factors weigh in Plaintiffs' favor.

### I. Plaintiffs Are Likely to Succeed on the Merits of their First Amendment Challenge

#### A.    The Ordinance Regulates Protected Speech.

The Ordinance clearly burdens First Amendment activities. By regulating the use of all public rights of way in the County, it authorizes the Sheriff to arrest

7

individuals engaged in the exercise of protected speech: standing along the roadway and holding signs. (*See* Exs. 1, 2.)

The examples of prohibited activity in the Ordinance further demonstrate this issue. The Defendant cannot reasonably dispute that the physical interaction provision regulates speech. The term "interaction" is not defined within the Ordinance (*see* ECF 1-1, § 4(A)(i)), so we look to that term's "common usage" to decipher its meaning. *Consol. Bank, N.A. v. U.S. Dep't of Treasury*, 118 F.3d 1461, 1464 (11th Cir. 1997). In common parlance, the term includes any "occasion when two or more people or things communicate with or react to each other." *Interaction*, Cambridge Dict., https://dictionary.cambridge.org/us/dictionary/english/interaction (last visited Aug. 22, 2024). Thus, the plain meaning of the physical interaction provision is to prohibit pedestrians and individuals in vehicles from communicating with each other—by exchanging written material, by speaking, or otherwise. The effect of this prohibition is to ban solicitation of donations, since this activity cannot occur without an exchange of a "product, material, or monies." (ECF 1-1 § 4(i).) The physical interaction provision regulates protected speech. *See Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 789 (1988); *see also Smith v. City of Ft. Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999) ("Like other charitable solicitation, begging is speech entitled to First Amendment protection.").

The median provision is also a regulation of speech, albeit disguised as a regulation on where pedestrians can stand. It punishes pedestrians from

8

"[s]topping, sitting, standing, or otherwise occupying or remaining in a median" when "not in the process of lawfully crossing the road." (ECF 1-1 § 4(ii).) A law that regulates where an individual can stand may nonetheless constitute a regulation of speech. *McCullen v. Coakley*, 573 U.S. 464, 476–77 (2014) ("[T]hough the Act says nothing about speech on its face, there is no doubt . . . that it restricts access to traditional public fora and is therefore subject to First Amendment scrutiny."). The median provision's burden "is hardly incidental to speech." *Riley*, 487 U.S. at 789 n.5. Rather, its "desired and intended effect" is to prohibit a certain form of speech: the type of solicitation that Plaintiffs conduct. *See id*. (*See* ECF 1 ¶ 18.)

Every Court of Appeals to have considered regulations like the physical interaction and median provisions has agreed that such ordinances regulate speech. *See, e.g.*, *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1219 (10th Cir. 2021) (applying First Amendment scrutiny to a ban on standing on road medians and pedestrian interactions with vehicles); *Cutting v. City of Portland*, 802 F.3d 79, 81-83 (1st Cir. 2015) (striking down ordinance that "indiscriminately bans virtually all expressive activity in all of the City's median strips"); *Reynolds v. Middleton*, 779 F.3d 222, 226 (4th Cir. 2015) (holding that a ban on solicitation on highways implicates the First Amendment because it "inhibits [the plaintiff]'s ability to collect donations by requiring him to move to locations where it is more difficult for drivers to make contributions"); *Traditionalist Am. Knights of the Ku Klux Klan v. City of Desloge*, 775 F.3d 969, 974 (8th Cir. 2014) (applying First Amendment scrutiny to a statute that prohibited standing in or entering roads to

distribute anything); *Houston Chron. Pub. Co. v. City of League City*, 488 F.3d 613, 621-22 (5th Cir. 2007) (prohibiting solicitation or distribution on public roadways requires application of strict scrutiny).

> **B.     The Ordinance Regulates Access to Public Fora.**

Plaintiffs' speech takes place in the rights of way along the County's streets and on sidewalks. (ECF 1 ¶¶ 38, 48, 57.) These locations are quintessential public fora. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009) ("[M]embers of the public retain strong free speech rights when they venture into public streets"); *Frisby v. Schultz*, 487 U.S. 474, 481 (1988) ("[A]ll public streets are held in the public trust and are properly considered traditional public fora.").

Solicitation on medians also implicates First Amendment protections because such spaces share fundamental characteristics with public streets, sidewalks, and parks. *See, e.g., McCraw v. City of Okla. City*, 973 F.3d 1057, 1067-68 (10th Cir. 2020); *Satawa v. Macomb Cnty. Rd. Comm'n*, 689 F.3d 506, 520 (6th Cir. 2012); *Cutting v. City of Portland*, 802 F.3d 79, 83 (1st Cir. 2015). This is not a case like *McDonald v. City of Pompano Beach*, where a city ordinance regulated pedestrian presence on medians "between three and five feet wide" that "divide roadways with at least three travel lanes in any one direction." No. 20-CV-60297, 2024 WL 3566471, at *31 (S.D. Fla. July 29, 2024). Rather, the Ordinance prohibits remaining on a median through two consecutive traffic cycles on all medians throughout the entire county, regardless of characteristics: whether they are large or small, contain sidewalks, benches, restrooms or bus stops.

The Ordinance thus regulates expressive activities in all public rights-of-way within St. Johns County and therefore must pass First Amendment scrutiny. Because the Ordinance is not narrowly tailored to the County's proffered interests, it fails constitutional review.

**C.  The Ordinance Does Not Survive Strict Scrutiny.**

**1. The Ordinance is a content-based restriction of speech.**

Some laws, "though facially content neutral, will be considered content-based regulations of speech: laws that cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Where "there is evidence that an impermissible purpose or justification underpins a facially content-neutral restriction, for instance, that restriction may be content based" and thus subject to strict scrutiny. *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 76 (2022).

This is just such a case. The purpose of the Ordinance was to regulate panhandlers and their messages. (ECF 1 ¶ 18.) The County Commission designed the Ordinance "to target those speakers and their messages for disfavored treatment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011). Measures passed solely to target a particular type of speech or speaker, though facially content neutral, are unconstitutional. *Id.* at 566 ("A government bent on frustrating an impending demonstration might pass a law demanding two years' notice before

the issuance of parade permits. Even if the hypothetical measure on its face appeared neutral as to content and speaker, its purpose to suppress speech and its unjustified burdens on expression would render it unconstitutional."). The County Commission's decision to pursue adoption of an ordinance to address panhandling—which it characterized as a "growing problem"—lays bare its true goal: to remove disfavored speakers and their speech from the County. *See 2023 Bd. of Cnty. Comm'rs*, St. Johns Cnty. Gov't Tele., at 7:31:20–7:32:10 (Jan. 17, 2023), https://stjohnscountyfl.new.swagit.com/videos/205995 (by consensus, directing the County Attorney "to bring something back to us" to address panhandling). (*See also* Ex. 1 at 23, 35, 40, 52, 56 (referring to the "panhandling ordinance").) Accordingly, the Ordinance must be subjected to strict scrutiny.

### 2. The Ordinance is Not Narrowly Tailored to a Compelling Government Interest

To withstand strict scrutiny, Defendant must prove that the Ordinance "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 156 U.S. at 171. Defendant must also show that the law is the "least restrictive means" of accomplishing that vital interest. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000) ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."). Moreover, because "'content-based regulations are presumptively invalid,' ... the Government bears the burden to rebut that presumption." *Id*. at 817 (quotation omitted).

12

Strict scrutiny "usually sounds the death knell for a challenged ordinance, particularly in the arena of the First Amendment." *Messina v. City of Ft. Lauderdale*, 546 F. Supp. 3d 1227, 1239 (S.D. Fla. 2021); *see also Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) ("We have emphasized that 'it is the rare case' in which a State demonstrates that a speech restriction is narrowly tailored to serve a compelling interest.") (citations omitted).

### a. The Ordinance Does Not Serve A Compelling Interest.

At the outset, it must be noted that the Ordinance itself does not assert that it is justified by a compelling government interest. (*See* ECF 1-1, at 1-3.) At most, it asserts a significant interest in motorist, pedestrian, and vehicular safety (collectively referred to herein as "traffic safety"). *See Solantic, LLC v. City of Neptune Bch.*, 410 F.3d 1250, 1267 (11th Cir. 2005) (noting that "our case law" has not recognized traffic safety as "compelling"). But, even if traffic safety were deemed to be compelling, the Ordinance does not serve this interest.

"When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply posit the existence of the disease sought to be cured." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994) (quotation marks omitted). "It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Id.*

Even when a statute is supported by legislative findings, the Court retains its "obligation . . . to assure that, in formulating its judgments, [the lawmaker] has

drawn reasonable inferences *based on substantial evidence.*" *Messina v. City of Ft. Lauderdale*, No. 21-CV-60168, 2024 WL 301574, at *20 (S.D. Fla. Jan. 26, 2024) (quotation marks omitted); *see also Turner*, 512 U.S. at 666 ("[W]e have stressed in First Amendment cases that the deference afforded to legislative findings does not foreclose our independent judgment of the facts bearing on an issue of constitutional law.") (internal quotations & citations omitted). Accordingly, the Court cannot "simply take [Defendant] at its word that the ordinance serves the aforementioned interests." *Buehrle v. City of Key West*, 813 F.3d 973, 978-79 (11th Cir. 2015). The government cannot rely on "shoddy data or reasoning," *id.* at 979, but rather must "come forward with some *objective* evidence in support of its ordinance." *Messina*, 2024 WL 301574, at *20.

Despite its efforts to justify the Ordinances' restrictions by reference to studies and data, Defendants have no *objective* evidence that the Ordinance actually furthers an interest in traffic safety as it relates to roadway solicitation in St. John's County. Like the Ordinance at issue in *Messina*, St. Johns County does not cite to a single instance of a person engaged in roadway solicitation causing, contributing to, or being injured by a motor vehicle accident. (*See* ECF 1-1, at 1.)

The raw data of accident reports from that period—the only truly objective data— reveal that solicitation is not a cause of traffic incidents in St. Johns County.[2]

---

[2] Plaintiff obtained this data through a Public Records Request. In Request No. R023052-043024, Plaintiff requested copies all accident reports of motor vehicles involving pedestrians in St. Johns County from Jan. 1, 2020, to May 2, 2023.

(*See* Ex. 3.) Of the 54 pedestrian-vehicular accident reports provided by the County, 14 did not involve a pedestrian; 11 involved a cyclist, hoverboard, or roller skater.  (*Id.* at 10-11, 15-17, 21-23, 39-41, 78-82, 89-94, 107-09, 119-21, 131-32, 136-38, 151-53, 157-59.)  Of the 40 accidents that did involve pedestrians, 12 occurred in parking lots or driveways. (*Id.* at 1-3, 7-9, 18-20, 30-38, 53-55, 59-61, 62-65, 116-118, 125-127, 154-56.) Crucially, not a single accident involved an individual engaged in roadway solicitation or distribution or a person present in the median.

Thus, contrary to establishing that Plaintiffs' expressive activity is dangerous, the objective data reveal the opposite: roadway solicitation has not caused traffic accidents in St. Johns County. This is precisely the scenario recently addressed in *Messina*, where the Court noted this lack of causal evidence. Rather than presenting such evidence, Fort Lauderdale "offered up lots of irrelevant data about things like "distracted driving," "'pedestrian fatalities,'" and "statewide traffic-accident figures." *Messina*, 2024 WL 301574, at *22 (granting final judgment to plaintiffs). Because none of defendant's data "identifie[d] *street solicitation* as a potential cause of" Fort Lauderdale's highway safety issues, the defendant failed to meet its burden under intermediate scrutiny and the hand-to-hand transmission ban was declared unconstitutional. *Id.*

The Tenth Circuit reached the same conclusion in *Brewer v. City of Albuquerque*, 18 F.4th 1205 (10th Cir. 2021). In that case, the Court found that the City failed to meet its burden to show that its pedestrian restrictions on medians and exchange with vehicles actually served its interest in traffic safety. *Id.* at 1226-

15

27 ("None of this evidence, however, points to significant safety problems arising from pedestrian presence near ramps or on medians, or from exchanges between pedestrians and vehicle occupants—and, further, those safety problems to which the evidence *does* point are not likely to be ameliorated by the relevant subsections of the Ordinance.").

In sum, like the ordinances in *Messina* and *Brewer*, the Ordinance "penalizes panhandlers whose conduct is not dangerous[.]" *Messina*, 546 F. Supp. 3d at 1250. In the absence of evidence that panhandlers, leafleteers, solicitors, or other speakers have contributed to accidents in St. Johns County, the County cannot show that the Ordinance is an "appropriate balance between the affected speech and the governmental interest that the ordinance purports to serve." *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 165 (2002); *see also McCraw*, 973 F.3d at 1071 (striking down a ban on pedestrians standing on medians after concluding "that the City's evidence is insufficient to demonstrate that the City's recited harms are real or that the [challenged] Ordinance will in fact alleviate [those] harms in a direct and material way" (quotation marks omitted)).[3]

### b. The Ordinance Is Not Narrowly Tailored.

For the Ordinance to survive First Amendment scrutiny, Defendant[s] must show not only that the Ordinance promotes a legitimate government interest, but

---

[3] Notably, the decisions cited in this section involved content-neutral restrictions reviewed under intermediate scrutiny, lending more support that the Ordinance cannot survive strict scrutiny.

also that the Ordinance does not "burden substantially more speech than is necessary" to further that interest. *Ward*, 491 U.S. at 799. The Ordinance must be a "close fit between ends and means[.]" *McCullen*, 573 U.S. at 486. In applying this, courts look "to the amount of speech covered by the ordinance and whether there is an appropriate balance between the affected speech and the governmental interests that the ordinance purports to serve." *Watchtower*, 536 U.S. at 165.

Here, there is no balance between the affected speech and the legitimate government interest in furthering roadway safety. The crash report data reveals that roadway solicitation or pedestrian presence in medians has not caused a single accident in St. Johns County. Instead, the reported accidents were primarily caused by drivers not noticing cyclists or pedestrians crossing the street, improper yielding of the right of way and driver inattention. Rather than addressing those issues, the Ordinance restricts the speech of solicitors and panhandlers. The requirement of a "close fit between ends and means" cannot possibly be met when an Ordinance regulates speech that has not led to a single accident. *See McCullen*, 573 U.S. at 486; *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 115-16 (2d Cir. 2017) (Oyster Bay's "Solicitation from Streets and Sidewalks Prohibited" ordinance was "not narrowly drawn" because it did "not require any connection between the prohibited speech—solicitation of employment—and the asserted interest—traffic and pedestrian safety").

Even assuming that solicitation at busy intersections is dangerous—which, again, is not supported by the data—the Ordinance is broader than necessary. Its

reach is not limited to busy intersections but rather prohibits First Amendment activity in all rights of way along every public road, street, and highway in the County, to include public sidewalks and grassy areas along roadways.

A narrowly-tailored statute would not restrict First Amendment activity in such wide swaths of the County. Thus, the Ordinance "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799; *see, e.g.*, *In re Ga. Sen. Bill 202*, No. 1:21-CV-01229, 2023 WL 5334617, at *1314 (N.D. Ga. Aug. 18, 2023) (statute not narrowly tailored to support election integrity because "it does not apply only in the immediate vicinity of the polling location and instead applies no matter the distance from the polls so long as a voter is present."); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1040 (7th Cir. 2002) ("The concerns behind . . . the ordinance were to alleviate sidewalk congestion [around the United Center] . . . [W]e cannot see how this can justify a restriction which prevents a peddler from selling his wares in large parking lots, less congested walkways, or sidewalks in less proximity to the United Center.").

And, as the County Attorney noted, "there are certainly other ways" Defendant can improve pedestrian safety. (*See* ECF 1 ¶ 20.) To meet narrow tailoring, Defendant must show "that it seriously undertook to address the problem with less intrusive tools readily available to it." *McCullen*, 573 U.S. at 494. It must show that it "considered different methods that other jurisdictions have found effective." *Id*. It must explain why enforcing state law about interfering with traffic will not be sufficient. Because it cannot do so, the Ordinance fails narrow tailoring.

18

*See Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale*, 11 F.4th 1266, 1296 (11th Cir. 2021) ("[A]n abundance of targeted alternatives may indicate that a regulation is broader than necessary.").

Thus, the Ordinance is not a "close fit between ends and means[.]" *McCullen*, 573 U.S. at 486. It burdens "substantially more speech than is necessary to further the [County]'s legitimate interests." *Ward*, 491 U.S. at 799. Defendant "has taken a sledgehammer to a problem that can and should be solved with a scalpel." *Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1294 (D. Colo. 2015).

Moreover, for the above reasons, the Ordinance is facially overbroad because it "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.'" *Va. v. Hicks*, 539 U.S. 113, 118-19 (2003) (quoting *Broadrick v. Okla.*, 413 U.S. 601, 615 (1973)). As an "overinclusive law" in violation of the First Amendment overbreadth doctrine, "*all* enforcement" of the Ordinance must be suspended. *Id.* at 119 (emphasis in the original). The Ordinance is so broad that it can be used to prohibit any form of expressive activities that occur along roadways in the County. *See Bd. of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987) (finding overbroad a law prohibiting "all First Amendment activities" and thus "prohibit[ed] even talking and reading, or the wearing of campaign buttons or symbolic clothing"). Everything from a pastor displaying a sign with a religious message, a fireman holding out a boot for a donation, or "a PETA demonstrator passing out flyers about a fast-food chain's

19

treatment of animals . . . could potentially be prohibited[.]" *FF Cosms. FL, `Inc. v. City of Miami Bch.*, 866 F.3d 1290, 1304 (11th Cir. 2017).

### D.  The Ordinance Does Not Survive Intermediate Scrutiny.

The Ordinance fails even if reviewed under intermediate scrutiny, which requires that the restrictions: (a) serve a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication. *Ward*, 491 U.S. at 791.

### a.  The Ordinance is Not Narrowly Tailored

The narrow tailoring inquiry is a crucial part of intermediate scrutiny for even content neutral regulations, as the First Amendment prohibits the government from suppressing speech "not only because it disagrees with the message being expressed, but also for mere convenience." *McCullen*, 573 U.S. at 486 (citing *Riley,* 487 U.S. at 795). Assuming that the County has a significant interest in traffic safety, as it asserts, the Ordinance is not narrowly tailored to that interest, as discussed above. *See supra* § I(C)(2)(b).

### b.  The Ordinance Does Not Leave Open Ample Alternative Channels.

The Ordinance also fails the third prong of intermediate scrutiny because it fails to leave open ample alternative channels for communication of the information.[4] Crucially, "the alternative channel (or channels) must be adequate and meaningful[.]" *LaCroix v. Town of Ft. Myers Bch.*, 38 F.4th 941, 952 (11th Cir.

---

[4] If the Court agrees with Plaintiffs that the Ordinance is not narrowly tailored, the Court need not reach this third "alternative channels" prong. *See McCullen*, 573 U.S. at 496 n.9.

2022). "The speaker must be able to effectively communicate his message to the intended audience in face of the Ordinance's restrictions." *Id.*

Defendant may argue that Plaintiffs can solicit in other areas of the County. But Plaintiffs direct their speech to vehicular traffic to increase the quantity of people who receive their message, "an audience that could not be reached nearly as well by other means." *See City of Ladue v. Gilleo*, 512 U.S. 43, 57 (1994). In other areas of the County, Plaintiffs will have to spend additional time to reach the same number of people as they would reach in the prohibited areas.  (ECF 1 ¶¶ 40, 49, 58.) "[T]he added costs in money or time . . . may make the difference between participating and not participating in some public debate." *See City of Ladue*, 512 U.S. at 57; *see also McCraw*, 973 F.3d at 1079 ("communications from sidewalks and roadsides would <u>not</u> provide adequate alternative opportunities for communication" as opposed to speaking on medians).

In sum, the Ordinance is not narrowly tailored to serve a significant government interest, and it fails to leave open adequate alternative channels of communication. *See McCullen*, 573 U.S. at 477. It therefore violates the First Amendment even under intermediate scrutiny.

### E.      The Ordinance is Unconstitutionally Vague

No state or locality shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Due process requires notice and fair warning; "[a]t its core, the ... principle is that no man shall be held

criminally responsible for conduct which he could not reasonably understand to be proscribed." *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1349 (11th Cir. 2011) (quotations omitted). "The void-for-vagueness doctrine serves two central purposes: (1) to provide fair notice of prohibitions, so that individuals may steer clear of unlawful conduct; and (2) to prevent arbitrary and discriminatory enforcement of laws." *Mason v. Fla. Bar*, 208 F.3d 952, 958 (11th Cir. 2000).

And, when protected speech is at issue, a "greater degree of specificity" is required. *Smith v. Goguen*, 415 U.S. 566, 573 (1974); *see also Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) ("where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms.'" (citations omitted). That is because vague laws "regulating the exercise of freedoms protected by the First Amendment risk 'chilling effects … since those persons covered by the statutes are bound to limit their behavior to that which is unquestionably safe.'" *Ala. Educ. Ass'n v. Bentley*, 788 F. Supp.2d 1283 (N.D. Ala. 2011) (quoting *U.S. v. C.I.O.*, 335 U.S. 106, 142 (1948)). The Ordinance fails these requirements.

The Ordinance does not provide sufficient warning of what conduct is proscribed. Plaintiffs have no way of knowing what actions might be considered "mak[ing] use of public rights-of-way in a manner that interferes with the safe and efficient movement of people and property . . . on a public road." Laws prohibiting actions that are subjective judgments, with no statutory definition, are impermissibly vague. *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1333 (M.D. Ala.

22

2019); *see also Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (law criminalizing conduct that is "annoying to persons passing by" unconstitutionally vague because "[c]onduct that annoys some people does not annoy others" and thus one is left to "guess at its meaning"). So it is here, as Plaintiffs are left to guess what actions would interfere with the "safe and efficient movement" of others. *See League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 947 (11th Cir. 2023) ("How is an individual seeking to comply with the law to anticipate whether his or her actions will have the subjective effect . . . ?"). The examples of prohibited activity provide no limitation on what may be criminalized under the Ordinance. (ECF 1-1 § 4.) Plaintiffs have been cited or warned for passively holding signs by the roadway. (Ex. 2.) If they instead wore brightly-colored shirts expressing their message, or stood by the roadway and waved to passing cars, would these actions interfere with traffic so as to violate the Ordinance?

The Ordinance also fails to provide minimal guidelines to govern law enforcement and prevent arbitrary enforcement. *See Mason*, 208 F.3d at 959 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."). Laws that "reach a substantial amount of innocent conduct" and "provide[] absolute discretion to police officers" to determine what is illegal are unconstitutionally vague. *City of Chicago v. Morales*, 527 U.S. 41, 60-61 (1999) (striking down an ordinance restricting loitering, defined

23

as "remain[ing] in any one place with no apparent purpose"). The Ordinance allows mere presence near a roadway to be a crime if law enforcement believes it is distracting to drivers; indeed, a Sheriff's deputy cited one individual for being at an "active intersection without making any effort to leave." (Ex. 1 at 12.) The Ordinance "results in a regime in which the poor and the unpopular are permitted to stand on a public sidewalk . . . only at the whim of any police officer" and therefore "is plainly unconstitutional." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170-71 (1972) (internal quotations & citations omitted).

## II. Plaintiff Has Met the Criteria for a Preliminary Injunction.

### A. Irreparable Injury

Ordinances that violate the First Amendment are "per se irreparable injur[ies]." *LaCroix* , 38 F.4th at  954-55 (citation omitted). "[T]he loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction.'" *Cate v. Oldham*, 707 F.2d 1176, 1188-89 (11th Cir. 1983) (quotation marks omitted)). The Ordinance directly infringes upon Plaintiff's First Amendment rights, so its harm cannot be "cured by the award of monetary damages." *KH Outdoor, LLC v. City of Titusville*, 458 F.3d 1261, 1272 (11th Cir. 2006). Irreparable injury is therefore established.

### B. Balance of Harms and Public Interest

The third and fourth preliminary injunction criteria are also satisfied. With respect to the balance of harms, "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury." *Scott*, 612 F.3d at

24

1297 (quoting *KH Outdoor*, 458 F.3d at 1272). On the other side of the ledger, "the public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law." *Id.* Enforcing unconstitutional laws wastes valuable public resources. Finally, because the public has no interest in enforcing an unconstitutional speech restriction, an injunction against enforcement cannot "disserve" the public interest. *Id.* at 1290, 1297.

### CONCLUSION

Based on the above argument, Plaintiffs respectfully request that the Court immediately enjoin enforcement of St. Johns County Ordinance No. 2023-16.

Dated: October 14, 2024

Respectfully submitted,

/s/ *Chelsea Dunn*

**Dante P. Trevisani**
Florida Bar No. 72912
*dtrevisani@fji.law*
**Ray Taseff**
Florida Bar No. 352500
*rtaseff@fji.law*
**Andrew Udelsman**
Florida Bar No. 1051696
*audelsman@fji.law*
Florida Justice Institute, Inc.
40 NW 3rd Street, Suite 200
Miami, Florida 33128
Phone: 305-358-2081
Fax: 305-358-0910

**Chelsea Dunn**
Florida Bar No. 1013451
Chelsea.Dunn@southernlegal.org
**Jodi Siegel**
Florida Bar No. 511617
Jodi.Siegel@southernlegal.org
**Daniel Marshall**
Florida Bar No. 617210
Dan.Marshall@southernlegal.org
Southern Legal Counsel, Inc.
1229 NW 12th Avenue
Gainesville, Florida 32601
Phone: 352-271-8890
Fax: 352-271-8347

**Attorneys for the Plaintiffs**